UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MULTI AG MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1908 (HHK) |
| | ) |
| DEPARTMENT OF AGRICULTURE, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant Local Rule 7(h), defendant submits the following statement of material facts as to which there is no genuine issue, with references to the part of the record relied upon to support the statement:

1. On July 13, 2005, Multi Ag Media submitted a Freedom of Information Act ("FOIA") request to the Farm Service Agency ("FSA") (a subcomponent of the Department of Agriculture), Kansas City Administrative Office ("KCAO"), requesting records from FSA electronic, tabular databases pertaining to twelve listed programs and for the "fully attributed file with digitized farm field boundaries" including listed specifications for the calendar year 2005. See Declaration of Robin Wieland ("Wieland Dec.") at ¶ 4 and Exhibit ("Ex.") A thereto.

2. In addition to the 12 electronic, tabular databases, Multi Ag Media requested a copy of the entire fully attributed Geographic Information System ("GIS"), Common Land Units ("CLU") for the 48 contiguous United States. See id. at ¶ 5 and Ex. A.

3. On August 8, 2005, the KCAO FOIA Officer granted Multi Ag Media's FOIA request in part and denied it in part.  The KCAO disclosed the Participating Producer File, the Producer

Payment Reporting System, and the Producer Type Code File in full to Multi Ag Media. See id. at ¶ 6-7 and Ex. B-E.

4. The KCAO determined that the Permitted Entity, Tobacco, and LCP Files should be released in part. See id. at ¶ 8 and Exs. F, G, and H.

5. The KCAO also concluded that the following files should be withheld in full: Compliance File, AMTA File, DCP File, CRP File, and APH File. See id. and Exs. B.

6. With respect to the LAP File, the KCAO did not make a determination because this file was not available. See id. at ¶ 10 and Ex. B.

7. As for the GIS, CLU database, the KCAO referred this portion of Multi Ag Media's FOIA request to the USDA, Aerial Photography Field Office, in Salt Lake City, Utah. See id. and Ex. B.

8. Multi Ag Media submitted a FOIA appeal to FSA on or about August 24, 2005. See id. at ¶ 11 and Ex. N.

9. In response to the appeal, FSA determined that the Tobacco File and the Permitted Entity Files should be disclosed in full. See id. at ¶ 13. FSA also determined on appeal that the following files should be released in part: Compliance File, AMTA, DCP, CRP, and, APH. See id. and Ex. O.

10. With respect to the LAP file, which was not available when Multi Ag Media's request was considered initially, FSA concluded that said file should be provided in redacted form on appeal. See id. at ¶ 14 and Ex. O. As for the LCP file, FSA determined that this electronic file should continue to be provided in redacted form. See id. Regarding the GIS, CLU database, FSA determined that it should be provided to Multi Ag Media in part. See id. and Ex.

O.

11. On February 15, 2006, FSA issued its determination with respect to certain data contained in the LAP File and Compliance File that had been withheld on appeal. FSA determined that additional information from the LAP File should be released. See id. at ¶ 18 and Ex. Q. On further review of the fields that comprise each record in the Compliance File, certain data is no longer collected and maintained by FSA; therefore with respect to the Compliance File, this information does not exist. See id.

12. Multi Ag Media submitted additional FOIA requests to the KCAO on October 3 and October 6, 2005, respectively. See id. at ¶ 19.

13. The KCAO processed the October 3, 2005, request partially and provided Multi Ag Media with copies of the 2005 calendar year AMTA File, 2005 calendar year DCP File, and 2005 calendar year APH File in full on October 12, 17, 19, and 20, 2005. See id. and Exs. T, U and V

14. With respect to the October 6, 2005, FOIA request, the KCAO processed said request completely. See id. at ¶ 21. In response to said request, the KCAO provided Multi Ag Media with a copy of the CRP file in full on October 19, 2005. See id. and Ex. W.

15. FSA views owners and operators of farming operations that are closely held businesses as being similar to individual farmers and producers. See id. at ¶ 16. Typically, such businesses are small family farms in which the financial makeup of the businesses mirrors the financial situation of the individual family members. See id.

16. The computer database located in KCAO cannot distinguish whether a business entity is closely held. Therefore, FSA has determined that the only way to ascertain which entities are not non-closely held businesses, for the purposes of determining what information is

releasable under FOIA, is to conduct a search of non-electronic records maintained in approximately 2,500 FSA county offices. FSA estimates that the cost to conduct such a search to be $1.2 million. See id. at ¶ 17 and Ex. P.

17. The process used to determine which business entities are considered non-closely held would be imperfect because employees in each individual FSA county office would make this determination based on their own judgment. Further, due to the nature of FSA programs, virtually all of the databases at issue contain information pertaining to individual producers or closely held entities. See id. at ¶ 17; see also id. at ¶¶ 26-28 (providing an overview of FSA activity.) FSA believes that the results of such a search would reveal a very small number of businesses, likely no more than two percent. See id. at ¶ 17, 28 (stating that 98% of farms are family owned).

18. The information collected by FSA is maintained in a Privacy Act System of Records, retrievable by name or a personal identifier. See id. at ¶ 28.

19. The LCP database pertains almost exclusively to individuals or closely held businesses. See id. at ¶ 16, 33.

20. The fields that were withheld from the LCP database would reveal information that would make public the financial condition of individual farmers or closely held businesses. See id. at ¶ 16, 32, 33, 34, 35.

21. Providing numbers on the specific numbers, types, and weights of livestock would not inform the public on FSA activities. See Wieland Dec. at ¶ 35, 36

22. FSA did release information from the LCP database which sheds light on FSA operations. See id. at ¶ 35.

23. The LAP database pertains almost exclusively to individuals or closely held businesses. See id. at ¶ 16, 41.

24. The fields that were withheld from the LAP Database would reveal information that would make public the financial condition of the individual farmers or closely held businesses. See id. at ¶ 37, 40, 42, 45.

25. Releasing the fields at issue would not educate the public much further on how FSA administers LAP, especially in light of the fact that the fields that were released indicate when the losses had occurred and the amount of the losses that were covered. See id. at ¶¶ 43-44.

26. FSA did release information from the LAP database which sheds light on FSA operations. See id. at ¶ 39, 43 and Exs. O, Q.

27. The Compliance File (Compliance Detail and Compliance Summary) database pertains almost exclusively to individuals or closely held businesses. See id. at ¶ 16, 50.

28. The fields that were withheld from the Compliance File (Compliance Detail and Compliance Summary) if disclosed would reveal information that would make public the financial condition of the individual farmers or closely held businesses. See id. at ¶ 52.

29. The fields withheld from the Compliance File does not explain how FSA performs it functions or administers its programs. See id. at ¶ 53. The Compliance File lacks payment information; therefore, the detailed crop information does not educate the public on how FSA administers its subsidy or benefits programs based on taxpayer monies. See id. at ¶ 53.

30. FSA did release information from the Compliance File which sheds light on FSA operations. See id. at ¶¶ 47, 48 53.

31. The Compliance File (Compliance Detail and Compliance Summary) database

pertains almost exclusively to individuals or closely held businesses. See id. at ¶ 16, 60.

32. The fields that were withheld from the GIS, CLU database would reveal information that would make public the financial condition of the individual farmers or closely held businesses. See id. at ¶ 61.

33. Viewing specific data about producers' livestock or farming operations within a given county on an aerial photograph or map is invasive, especially when the photograph or map does not reveal anything about FSA conduct or activities. See id. at ¶ 62. The privacy interests of the agricultural producers whose information could be imported into the GIS, CLU database are significant, given the spatial, geographic dimensions of this database. See id. at ¶ 63.

34. The fields withheld from the GIS, CLU database do not reflect FSA conduct or performance. See id. at ¶ 62.

35. The CLUID attribute relates solely to the internal workings of the computer and the GIS software and provides the means by which FSA identifies and tracks information in GIS. See id. at ¶ 65.

36. The CLUID relates to the internal practices of the agency in that it is utilized by agency personnel in the performance of their jobs. See id. at ¶ 66.

37. Release of the CLUID codes located in the GIS database could assist unauthorized users gaining access to the system to navigate the system and thereby delete or alter the information contained therein. See id. Such alterations could assist persons in disrupting agency operations or invading the personal privacy of the individuals' farming practices. See id.

38. FSA has disclosed all reasonably segregable materials from the records for which it is maintaining its claims of exemption. See id. at ¶ 32, 39, 47, 48, 58, 67.

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney


/s/
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney


/s/
PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated: February 15, 2006