IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Multi Ag Media LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:05CV-01908 |
| | ) |
| U.S. Department of Agriculture, | ) Judge: Henry H. Kennedy |
| | ) |
| Defendant. | ) |

AFFIDAVIT OF JOHN L. MONTANDON

PERSONALLY APPEARED BEFORE ME, the undersigned officer duly authorized by law to administer oaths, JOHN L. MONTANDON, who after being sworn stated of his personal knowledge as follows:

1. My name is John L. Montandon, and I am the President of Multi Ag Media LLC, d/b/a Farm Market iD. I co-founded Multi Ag Media in 1996, and I have held my present position since that time. Multi Ag Media, under its trade name 'Farm Market iD,' is the leading vendor to the agricultural community of detailed information on the farming landscape in this country.

2. I am responsible within Multi Ag Media for submitting FOIA requests to the Farm Services Agency ("FSA") in the U.S. Department of Agriculture

1

for the release of data on farms, and I have been responsible for doing so for the past nine years.

3. I was reared on my family's cotton, grain, and livestock farm in Texas. I received a Bachelor of Science degree from Texas Tech University in Agricultural Economics, and I received an M.B.A. from Pepperdine University.

4. From 1969 to 1975, I held a series of management positions with DeKalb AgResearch, Inc, which was a leading provider of hybrid seed to the farming community. One of my major responsibilities with DeKalb was the analysis of farm data collected by the predecessor of the present FSA.

5. From 1975 until I co-founded Multi Ag Media in 1996, I was employed by Argus Publishing, Inc., and its predecessors, where I was the President & Publisher of twelve separate magazines and production guides for farms and others in the agricultural community.

6. On behalf of Multi Ag Media, I submitted to FSA the FOIA request dated July 13, 2005, which is attached as Exhibit "A" to the declaration of Ms. Robin Wieland submitted on behalf of defendant USDA.

7. In order to show the Court which data files, or parts of those files, covered by my FOIA request have not been released by FSA as of the date of this affidavit (March 3, 2006), I will list below the data files we have not received, or that we have received only in incomplete form. The Court will note that in several instances FSA claims that it has released a file

2

when, in fact, it has not done so. (I will not list or discuss those data files that FSA has released in full, since of course those files are not at issue in this lawsuit.)

8. *Permitted Entity File.* Although Ms. Wieland states in her declaration (¶ 13, at page 5) that FSA has decided to release this complete file, we have not received it. Since defendant USDA submitted Ms. Wieland's declaration, I have personally requested the FSA field office in Kansas City (where these databases are maintained) to release this complete file, and, at my instruction, our counsel made the same request to counsel for defendant USDA in this case, without any response.

9. *CRP, AMATA, DCP, and APH Files.* Ms. Wieland states in her declaration (¶¶ 20-22, at page 7) that these files have been released "in full." To the contrary, we have received versions of these files in which the unique serial number that FSA assigns to each farm (the "FARM-NBR") has been deleted and replaced by a "dummy" farm sequence number. This change makes the file unusable, because without these unique numbers the data in the file cannot be related to a particular farm. We believe that the addition of the dummy farm sequence number is an alteration by FSA of the file from the manner in which FSA maintains it in the normal course of business. In addition, FSA has deleted the contract numbers and customer numbers from these files as released to us. Again, since receiving Ms. Wieland's declaration, I personally requested FSA to

3

release the complete files, and, at my instruction, our counsel made the same request to counsel for USDA in this case, without any response.

10. *Compliance File.* Ms. Wieland states in her declaration (¶¶ 47-48, at page 18) that we have received 41 fields from the Compliance Detail sub-part of this file, and 24 fields from the Compliance Summary sub-part of this file. To the contrary, we have not received any part of the Compliance file. Once again, since receiving Ms. Wieland's declaration, I personally requested FSA to release at least the fields from the Compliance file that Ms. Wieland states that are to be released, and, at my instruction, our counsel has made the same request to counsel for USDA in this case, without any response.

11. Although we have not yet received the CRP, AMATA, DCP, and APH files, Ms. Wieland in her declaration, as noted above, states that FSA is withdrawing its objection to releasing these files. *See* Wieland decl., ¶¶ 20-22, at page 7. FSA, however, is continuing to object to releasing acreage data from the Compliance file. Since the CRP, AMATA, DCP, and APH files contain acreage data similar to that in the Compliance file and the LCP and LAP files, this action by FSA appears to me to be inconsistent. I do not see any explanation anywhere in Ms. Wieland's declaration of why the acreage data in the Compliance file is exempt from release, while the similar data in, for example, the CRP file is releasable, and I cannot think of any reasonable explanation for this different treatment of acreage data.

12. *LCP and LAP Files.* FSA has withheld from these files the data fields that show the number of head of livestock on a farm or ranch, the weight range of the head of livestock, the days the livestock have been fed, and the grazing loss and grazing acreage.

13. *Farm Field Common Land Unit.* Ms. Wieland states in her declaration (¶ 58, at pages 28-29) that FSA will release the CRP layer and the Comments layer from this database, but despite my requests we have not received these layers. In addition, FSA is withholding four data fields that I requested in my FOIA request (the farm number, the tract number, the Highly Erodible Land Type code, and the CLU classification code). I did not request the CLU identification number, or "CLUID," and I do not believe the CLUID is at issue in this lawsuit.

14. I understand that FSA asserts that there is a privacy interest that is invaded by, "[v]iewing specific data about a producer's livestock or farming operations within a given county on an aerial photograph or map." Ms. Wieland's declaration at ¶ 62, at page 32. I disagree with that assertion, for two reasons. First, satellite images of virtually every address in the country are already available on the internet through Google Earth, http://www.earth.google.com, and I believe that Google obtains these images from NASA at the cost of reproduction (which is not substantial). The U.S. Government does not object to the release of these satellite images on privacy or any other grounds. Second, when a farm elects to receive substantial government monetary subsidies, that farm has no

5

privacy interest in preventing disclosure of a FSA database of satellite images that FSA maintains to monitor eligibility and compliance with FSA programs. (See ¶ 29 of my affidavit below, where I discuss a National Public Radio report on USDA's use of the GIS to detect fraud in the crop insurance program.)

15. FSA has in past years released under FOIA data files complete with farm numbers, tract numbers, field numbers, customer numbers, plus crop and acreage data. Until recently, FSA never told me that the farm numbers, tract numbers, field numbers, customer numbers, or crop and acreage data were exempt under FOIA or that they implicated the privacy interests of any farm. USDA has never given any explanation of why it has changed its position with respect to the release of these numbers under FOIA.

16. For example, I have attached to my affidavit as Exhibit "A" the 'file layout' for the Compliance file as it appeared from 1990 to 2003. (A 'file layout" is simply a list and explanation of the fields contained in a data file.) We received Exhibit "A" from FSA. It shows that the Compliance file for those years contained the farm number, tract number, field number, and the data on crops and acres (such as crop code, reported acres, and determined acres) that linked to these unique identifying numbers. These fields were always contained in the file as released to us. FSA, however, has now decided to withhold these fields, with no explanation of why it has changed its position.

17. Ms. Wieland attached to her declaration as Exhibit "I" the file layout for the Compliance file that has not been released to us. This file layout, dated "10/24/04," shows the same fields for farm number, etc., as the file layout for previous years that I have attached as Exhibit "A." The 'Readme note' dated September 21, 2005, which Ms. Wieland included in Exhibit "I," states that a "complete copy" of the Compliance file is to be released to us. I see no explanation anywhere in Ms. Wieland's declaration of why FSA now is refusing to release the entire Compliance file when this Readme note states that it is to be released in full.

18. None of the data covered by my FOIA request is either financial or personal with respect to any individual. Instead, these data are all generic or demographic, such as, for example, the number of acres of particular crops on a farm, or the number of head of livestock on a ranch. I believe it is important to note that the data in question are submitted to FSA by farms and ranches in order to participate in FSA subsidy and benefit programs. To the best of my knowledge, FSA does not give the farms and ranches that submit these data any promise or assurance that the data will not be released under FOIA, and as I noted above, in previous years FSA has released these data.

19. Based on my lifetime of experience in agriculture, it is not correct to assert that the type of acreage and other data covered by my FOIA request would 'shed light' on the financial condition of any particular farm, because there are too many very common economic variables. For

7

example, many farms have multiple owners and multiple operators. Often the owner(s) of a farm will not operate the farm, and the operator(s) of the farm will have no ownership interest in it. The owner(s) of the farm may, or may not, have any ownership interest in the crops the operator is growing on the farm. Less often, but still not unusual, neither the owners nor operators of a particular farm will have any ownership interest in the crops being grown on the farm, because those crops are owned by a food processor or canner, such as Campbell's Soup Company, which pays the owners or operators to grow them.

20. In these common situations, data on the number of acres and crops that cannot support any inference about the financial condition of either the owner or the operator.

21. Interestingly, the General Accounting Office, in testimony before the Senate Finance Committee on June 16, 2004, noted that, "[w]e found several large farming operations that were structured as one or more partnerships, each consisting of multiple corporations that increased farm program payments in a questionable manner." GAO, "Farm Payments Programs: USDA Should Correct Weaknesses in Regulations & Oversight to Better Ensure Recipients Do Not Circumvent Payment Limitations" (GAO-04-861T), at 6. This testimony shows the wide variety of ownership and operating vehicles that are used for farms, which completely negates any inference about the personal finances of any individual. I have attached to this affidavit as Exhibit "B" a chart that was

8

included in this GAO testimony, which shows the complex ownership structure of a single family-owned farm. I note that GAO states that the data on this chart was taken from the Compliance file, which FSA has withheld from release.

22. Similarly, it is often the case that a particular ranch will have a certain number of head of livestock grazing on the ranch, but the owners of the ranch will have no ownership interest in any of the livestock, and the owners of the livestock may have no ownership interest in the ranch. In these common situations, data about the livestock says nothing about the financial condition of the particular ranch.

23. Farms and ranches that participate in FSA subsidy and benefit programs are business entities in that they are operated to produce a profit. I understand that FSA seeks to draw a distinction between farms that are "closely held" and those that are owned by a larger number of owners.

24. Based on my lifetime of experience in agriculture, the term "closely held" is not commonly used to describe the ownership of farms, and this term certainly lacks any clear definition in the agricultural context. While it is true that many farms are owned by a single family, these family-owned farms are often large, substantial businesses. For example, the farm shown on the GAO chart I have attached to this affidavit (Exhibit "B") could be considered 'closely held' since it is ultimately owned by a single family using numerous companies.

25. As another example, the Armstrong ranch in Texas, where the recent hunting accident involving the Vice President took place, is so large that it has its own Zip Code and airport, but it is owned by a single family. Under FAS's approach, data about the number of acres included in this Zip Code should be considered personal financial information because the Armstrong ranch is 'closely held.'

26. Each year FORBES MAGAZINE publishes a survey of 'closely held' companies. In 2005, FORBES reported that the largest company "on our roster of closely held businesses" was Cargill Incorporated, an agribusiness based in Minneapolis, which had annual revenues of $67 billion and 115,000 employees. FORBES MAGAZINE (Nov. 28, 2005) at 212.

27. There is a substantial public interest in the data covered by my FOIA request because these data determine a farm's eligibility to participate in particular FSA subsidy and benefit programs, and the amount of money to be paid to a particular farm. If these data are no longer made public, there will be no way to know if FSA is complying with the law in spending the substantial sums that are appropriated by Congress for these programs each year.

28. The public interest in these data is shown by the recent series of stories on National Public Radio about FSA's programs. For example, on July 11, 2005, National Public Radio aired a report entitled: "The CRP: Paying Farmers Not To Farm," by NPR reporter Dan Charles. The NPR 'lead-in'

for his story stated: "The CRP has had successes, but as Dan Charles reports for *All Things Considered*, the program is also controversial." (The transcript of this report is on the NPR website at http://www.npr.org/templates/story/story.php?storyId=4736044.) The "CRP" that was the subject of this NPR report is the program covered by the CRP data file that I requested in my FOIA request.

29. Similarly, on November 16, 2005, NPR aired another report on fraud in FSA's programs entitled, "High-Tech Methods Crack Farm Insurance Cheats." This report concerned USDA's use of its GIS to detect possible fraud in the crop insurance program and quoted an investigator as stating, "From this satellite image we were able to show that the field was not even plowed. It wasn't even planted with cotton or grain sorghum." (The full report is on NPR's website at http://www.npr.org/templates/story/story.php?storyId=5013871.) FSA has withheld the key layers and fields of the GIS.

30. In "Tomato Farmers Caught Out In Insurance Scam," which aired on November 14, 2005, NPR reporter John Burnett reported that there is "a culture of cheating that has grown up among a small group of farmers who exploit the nation's government-backed crop insurance program. The program was tailor-made for fraud." He further reported that "the USDA was unwittingly complicit in the scheme." (The transcript of this report is on the NPR website at http://www.npr.org/templates/story/story.php?storyId=5009836.).

11

31. These NPR reports on the FSA programs covered by the data files I requested under FOIA show that there is a substantial public interest in release of the data in these files.

_____
John L. Montandon

SUBSCRIBED & SWORN TO
BEFORE ME, this 3rd day of March, 2006

_____
Notary Public

VERONICA MORAN
COMM. # 1465420
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. FEB. 11, 2008

12

# EXHIBIT A

**Case No. 1:05-CV-01908**

# Compliance Extract Files
## 1990 – 2003

| Record:<br>1990 – 2003 Compliance Extract Files | Record Glossary Report | | | 12/30/03 | |
|---|---|---|---|---|---|
| | Record Definition:<br>FFFOIA.XTR.COMPLNC.SCFT.YRXX.DTXXXXX | | Record | 207 | 27945 |
| **Element Name (Business Name)** | **Element Definition** | **IDDU Name** | **Length** | **Type** | |
| State Code | State Code Number in Char format | STATE | 2 | Display | |
| County Code | County Code Number in Char format | COUNTY | 3 | Display | |
| FARM-NBR | This element contains the farm number that relates all associated tract and field elements | FARM | 7,0 | Zone | |
| NUM-TRACT<br>(Tract Number) | This element contains the tract number related to this farm for farm divisions and combinations. (One record for each tract assigned to the farm,<br>(F in IND-KEY-TYPE1)). On tract divisions this element contains a resulting tract number,<br>(T in IND-KEY-TYPE1). On crop level records (G or V in IND-KEY-TYPE1) this element contains in a crop code(4 positions), crop practice(1 position), and crop year. On crop level records involving allotments for wheat and cotton on farm divisions and farm combinations (G in IND-KEY-TYPE1) this element will contain crop code (4 positions), the character "A" (5th position, farm division only), spaces. | TRACT | 7,0 | Zone | |
| NUM-FLD<br>(Field Number - Alpha) | A number that uniquely identifies a field of a tract and farm. (Centered within the field) | FLDNUM | 6 | Display | |
| CODE-STAT<br>(Status Code) | Record Status Indicator. The following is a complete list of record status codes that may be used together. To identify valid codes for this record, check the related Record Description. Valid values are:<br>" " -Active<br>C - Inactive -- Canceled<br>D - Inactive -- Deleted<br>I - Crop still resides on the parent farm<br>N - Inactive -- New Farm (Pending COC Approval)<br>P - Active -- Parent Farm (Partial Reconstitution)<br>R - Active -- Rejected (After-the-Fact validation)<br>U - Crop has been moved to the resulting farm(s)<br>V - Active -- Validated (After-the-Fact validation)<br>W - Withdrawn- SRR Rate has been withdrawn by County and no longer active<br>Z - Tract Contribution Percentage out of balance<br>I-DEF AEPC60 003 AMPTSF 018 | STATUS | 1 | Display | |
| CODE-CROP<br>(Crop Code) | A 4-digit numeric code used to identify a crop.<br>Valid values are:<br>0001 - Burley Tobacco<br>0002 - Flue-Cured Tobacco<br>0003 – Virginia Fire-Cured Tobacco<br>0004 - Fire-Cured Tobacco<br>0005 - Dark Air Cured Tobacco<br>0006 - Virginia Sun Cured Tobacco<br>0007 - Cigar-Filler Binder Tobacco<br>0008 - Cigar-Binder Tobacco | CROPCD | 4,0 | Display | |

| | | | | |
|---|---|---|---|---|
| | 0009 - Maryland Tobacco<br>0010 - Cigar-Filler Tobacco<br>0011 - Wheat<br>0012 - Cigar-Wrapper Tobacco<br>0016 - Oats<br>0018 - Rice<br>0021 - Upland Cotton<br>0022 - ELS Cotton 0041 - Corn<br>0051 - Sorghum 0075 – Peanuts<br>0091 – Barley | | | |
| CODE-PRAC (Practice Code) | A field used to determine a particular practice for the crop. Valid values are:<br>N - only non-irrigated farm crop data is possible<br>B – both practices are possible<br>I – only irrigated farm crop data is possible | PRCTCD | 1 | Display |
| CODE-CROP-STAT-ALPN (Crop Status Code) | A 3-character code used to identify crop status. Valid values are found in 2-CP. (Last digit is blank) | STATCD | 3 | Display |
| LOC-STATE (Location State) | State where the farm is actually located | SFSAL | 2 | Display |
| LOC-COUNTY (Location County) | County where the farm is actually located | CFSAL | 3 | Display |
| DESC-CROP (Crop Abbreviation) | A 5-character abbreviation used for a crop. For 1991 and subsequent years authorized codes are recorded in the KCMO Universal Crop Table. | CROPAL | 5 | Display |
| CODE-TYPE-CROP (Crop Type Code) | A 3-character abbreviation for crop type. The 1991 authorized codes are recorded in the KCMO Universal Crop Table. | TYPEPA | 3 | Display |
| DESC-TRACT (Tract Description) | This is a description field that can contain anything. Usually contains a legal description or actual photo grid description of the farm it is describing. | DESC | 50 | Display |
| CODE-INTN-USE (Intended Use Code) | See Compliance Handbook 2-CP (Revision 14) for complete list of intended use codes. This field is only required for certain crops. It represents what the crop is used for such as grain, grazing, haying, silage etc. | INTUSE | 2 | Display |
| NUM-CNVRSN-FCTR (Acreage Conversion Factor) | When multiplied times the determined acres for the crop and divided by 10000, will give the actual acres planted. Valid for cotton and tobacco only. | CNVFTR | 4,0 | Zone |
| QTY-RPT-ACRE-1 (Reported Acreage) | Reported acres for crops, all reported in hundredths. | RPTACR | 9,2 | Zone |
| QTY-DTER-ACRE-1 (Determined Acreage) | Determined acres for all crops, is reported in hundredths. | DETACR | 9,2 | Zone |
| QTY-FMLD-ACRE (Farmland Acres) | Total farmland acreage for the tract | FARMLD | 9,2 | Zone |
| QTY-CRPLND-ACRE (Cropland Acres) | Acreage determined to be suitable for crop production | CROPLD | 9,2 | Zone |
| QTY-RPT-DBL-ACRE (Double Program Crop Acreage - Rpt) | Number of acres that were reported with a "B" for the left character of the crop status code. "B" is for program crop behind program crop. Double crop for cropland exceeding sum of Crop Acreage Base (CABs). | RPTPDB | 9,2 | Zone |
| QTY-DTER-DBL-ACRE (Double Program Crop Acreage - Det) | Number of Determined acres with a "B" for the left character of the crop status code. "B" means program crop behind program crop. Double crop for cropland exceeding sum of Crop Acreage Base (CABs). | DETPDB | 9,2 | Zone |
| QTY-RPT-DBL-ACRE-1 (Double Cropped Acreage - Rpt) | Number of acres that were reported with a "D" for the left character of the crop status code. "D" means double crop (2nd crop). | RPTDBL | 9,2 | Zone |
| QTY-DTER-DBL-ACRE-1 (Double Cropped | Number of non-program crop Determined acres which had a "D" for the left character of the crop status code. "D" means | DETDBL | 9,2 | Zone |

| | | | | |
|---|---|---|---|---|
| Acreage - Det) | double crop (2nd crop). | | | |
| DATE-PGM-YY (Program Year) | This field describes the program year. | PGMYR | 4,0 | Zone |
| DATE-RPT (Report Date) | Identifies the date of last entry into the record. | RPTDTE | 6,0 | Zone |
| DATE-END-YEAR (End Year) | The final year that a producer had a particular relationship to a particular farm. | ENDYR | 4,0 | Zone |
| NUM-ROW-PATRN-IN (Row Pattern-In) | For a cotton or tobacco planting pattern, this is the number of rows that are planted before a row is skipped. | RWPTIN | 2,0 | Zone |
| NUM-ROW-PATRN-OUT (Row Pattern-Out) | For a cotton or tobacco planting pattern, this is the number of rows that are not planted (skipped). | RWPTOT | 3,0 | Zone |
| NUM-ROW-WDTH (Row Width) | Width of planted row, in inches. This field is only used for cotton and tobacco. | RWWDTH | 2,0 | Zone |
| NUM-ROW (Row Count) | Number of rows. Number of rows planted for the field. Valid for cotton and tobacco only. | ROWS | 3,0 | Zone |
| NUM-SKIP-WDTH (Skip Row Width) | Skip width. The width of the row area, in inches, skipped between planted rows. Valid for cotton and tobacco. | SKIPWD | 3,0 | Zone |
| Record Sequence Number | Sequence Number, 5 digits | | 5 | Zone |
| IND-MULT-TR (Multiple Tract Indicator) | Indicates if tract is part of a multiple tract. Valid values are: " " - Tract is not a multiple tract<br>Y - Tract is multiple tract | MULTR | 1 | Display |
| CODE-INS-CVR (Insurance Coverage Code) | Indicates the type of insurance coverage for a crop. Valid values are:<br>" " – Insurable crop and producer waived coverage.<br>I – Insurable crop and has coverage.<br>N - Crop is in Noninsured Assistance Program (NAP). | INSCVR | 1 | Display |
| IND-LAND-USE (Land Use Code) | Identifies the crop's land use. Valid values are:<br>A - ACR<br>C - CU for P&CP<br>P - CU for pay<br>O –c OCROP<br>X - Flex (all year)<br>F – Flex (Fall Flex)<br>S - Flex (Spring Flex) | LNDUSE | 1 | Display |
| IND-LAND-USE-SUMM (Land Use Summary Indicator) | Indicates whether land user is summarizes as special or not special. Valid values are: " " - not a special summary Y - Special summary | LNDSUM | 1 | Display |
| CODE-TYPE-FCIC (Crop Type Code - FCIC) | Crop type reporting number. Alpha numeric code set by CGRD to identify the Federal Crop Insurance Corp. (FCIC) crop type. Refer to the Universal crop table for valid values. | FCICTP | 3 | Display |

# EXHIBIT B

**Case No. 1:05-CV-01908**

United States General Accounting Office

**GAO**

Testimony
Before the Committee on Finance, U.S. Senate

For Release on Delivery
Expected at 11:00 a.m. EDT
Wednesday, June 16, 2004

# FARM PROGRAM PAYMENTS

## USDA Should Correct Weaknesses in Regulations and Oversight to Better Ensure Recipients Do Not Circumvent Payment Limitations

Statement of Lawrence J. Dyckman, Director
Natural Resources and Environment



GAO
Accountability * Integrity * Reliability

GAO-04-861T



Figure 1: Large Operation Containing Farming and Nonfarming Entities

Note: Percentages shown are share of ownership.

Similarly, we found another general partnership that farmed more than 50,000 acres in 2001 and that conducted business with nonfarming entities,