IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Multi Ag Media LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 05-1908 (HHK) |
| ) | |
| U.S. Department of Agriculture ) | |
| ) | |
| Defendant. ) | |
| ) | |

RESPONSE OF PLAINTIFF MULTI AG MEDIA
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Pursuant to this Court's Order of July 7, 2006, granting leave to Plaintiff Multi Ag Media LLC ("Multi Ag Media") to file a response to the reply filed by Defendant U.S. Department of Agriculture ("USDA"), Multi Ag Media submits this Response and the Second Supplemental Affidavit of John Montandon, which is filed with this Response.

I. *The Burden Is On USDA To Sustain The Withholding of The Agency Records At Issue*

The statutory burden is on USDA in this Freedom of Information Act case to sustain its action in withholding the agency records at issue. 5

1

U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action."); *Consumer Federation of America v. USDA*, No. 05-5360, 2006 WL 1789006 (D.C. Cir. June 30, 2006) (summary judgment in FOIA case may be granted on basis of agency affidavits "if they are not called into question by contradictory evidence in the record") (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)).

Multi Ag Media submits that in this case USDA has failed to sustain its statutory burden, as shown below.

II.  *The Agency Records In Question Are Listed In Mr. Montandon's Supplemental Affidavit*

In its Reply, USDA does not dispute that the agency records still at issue are those listed in ¶ 3 of Mr. Montandon's Supplemental Affidavit (May 31, 2006). Those agency records are as follows:

> (a) 23 data fields in the Compliance file as described in the Declaration by Ms. Robin Wieland of USDA (Feb. 15, 2006) at ¶¶ 47-48. Eight of these withheld data fields, as shown below in § III, contain acreage and crop data that is of exactly the same type that USDA has recently released.

(b) five attributes of the Geographical Information System ("GIS") listed in ¶ 59 of Ms. Wieland's first Declaration (not including the CLUID, which is not within the scope of the FOIA request here);

(c) Livestock Assistance Program ("LAP") file; and

(d) Livestock Compensation Program ("LCP") file.

These appear to be all the agency records now at issue in this case.

In its Reply, USDA makes much of the quantity of agency records it has released in response to the FOIA request made by Multi Ag Media. The fact is that the bulk of these agency records were released only *after* Multi Ag Media filed its Opposition to USDA's motion for summary judgment, including Mr. Montandon's first Affidavit (Mar. 3, 2006). This fact is shown by Mr. Montandon's first Supplemental Affidavit (May 31, 2006). Moreover, USDA now appears to concede that it deliberately altered some of the records it released in 2005 in response to the FOIA request by inserting "dummy"

numbers in some data fields. *See* Second Declaration of Ms. Wieland of USDA, at ¶ 9, at page 4 (July 3, 2006).

Finally, USDA concedes in its Reply (at pages 15 to 16) that it in previous years it released in response to FOIA requests the same agency records that it is now withholding. USDA makes the wholly irrelevant argument that it cannot waive the privacy interests of farmers. The real issue, however, is whether USDA should be permitted one year to release these data, and the next year to withhold them, without any intervening change in the law or any explanation from the agency of why it is changing its legal position. It is a fundamental principle of administrative law that an agency must explain the basis for changes in its position. Multi Ag Media has repeatedly requested from USDA an explanation of the change in its legal position, without any response.

III.  *Ms. Wieland Concedes In Her Declaration That The AMTA Tract File Contains 'Total Farmland & Cropland Acreage'*

In his first Supplemental Affidavit (May 31, 2006), Mr. Montandon showed that USDA had recently released to Multi Ag Media data files that showed the complete crop and acreage data

for each of hundreds of thousands of specific, identifiable farms. Mr. Montandon, however, also showed that USDA was continuing to withhold the same type of data from the Compliance File on other farms,[1] without any explanation.

Ms. Wieland now argues (in her Second Declaration at ¶ 25, at page 11) that the data recently released to Multi Ag Media would show only "historical average acreage," and not current crops and acreage. Yet she concedes that the AMTA Tract File, which USDA recently released, *also* includes 'total farmland and cropland acreage.' *Id.* at ¶ 17(b), at page 8. As Mr. Montandon shows in his Second Supplemental Declaration (¶ 5, at pages 3 to 4), the 'total farmland and cropland acreage' in the recently-released AMTA Tract File is not historical data. Instead, it is "current, actual, program-year data." He further explains how

---

1. [1] Mr. Montandon specifically identified the eight data fields that USDA is withholding that contain this crop and acreage data on the remaining farms. *See* Mr. Montandon's first Supplemental Affidavit at ¶ 4; and his Second Supplemental Affidavit at ¶ 3. USDA nowhere addresses these eight specific data fields. The eight data fields in question are as follows: (a) the Reported Acreage (QTY-RPT-ACRE-1); (b) the Determined Acreage (QTY-DTER-ACRE-1); (c) the Farmland Acres (QTY-FMLD-ACRES); (d) Cropland Acres (QTY-CRPLND-ACRE); (e) Double Program Crop Acreage - Reported (QTY-RPT-DBL-ACRE); (e) Double Program Crop Acreage - Determined (QTY-DTER-DBL-ACRE); (f) Double Cropped Acreage - Reported (QTY-RPT-DBL-ACRE-1); and (g) Double Crop Acreage - Determined (QTY-DTER-DBL-ACRE-1).

Multi Ag Media used these current data to derive the full set of crop and acreage data for approximately 22.4% of the farms in the Compliance File.

Thus, USDA has failed to carry its statutory burden of sustaining its action in withholding data on some farms, while releasing the same type of data on other farms. USDA may not pick-and-choose which data to release and which to withhold. It must act consistently, which it has not done in this case.

Even if Ms. Wieland were correct in her assertion that USDA had released only "historical" crop and acreage data – which she is not – USDA would still have the burden of showing that there is some privacy interest in (withheld) current data that is lacking in (released) historical data. The 'historical' data discussed by Ms. Wieland dates from 1991 to 2001. *See* Ms. Wieland's Second Declaration at ¶ 17(b), (c), at pages 8 to 9. This is not ancient history. USDA, however, nowhere makes any showing that there is any significant difference in terms of the 'privacy' interest that it now has found in these data that it previously released.

In its Reply, for the first time, USDA suggests that the Compliance File actually contains data on farm operations that do

not participate in USDA subsidy and benefit programs. *See* USDA Reply at page 12; Ms. Wieland's Second Declaration at ¶ 18, at page 9 to 10. Ms. Wieland, who devoted nine pages of her first Declaration to describing the Compliance File, neglected anywhere in that Declaration to mention that parts of this file have nothing to do with USDA programs. USDA also fails to offer any explanation of why it collects these data in the first place (and maintains the data in a "Compliance File") although the data supposedly have nothing to do with USDA programs. Without some further explanation or justification, USDA's position cannot sustain its burden.

In any event, however, as Mr. Montandon shows in his Second Supplemental Affidavit, at ¶ 3 at pages 2 to 3, all of the eight data fields that contain the same crop and acreage information that USDA has recently released on other farms do relate directly to USDA programs. So USDA's new argument is irrelevant with respect to these specific eight data fields.

IV.   *USDA Fails to Address The Controlling Authority On The Existence Of A 'Privacy' Interest*

7

In its Reply, USDA cites but does not discuss the two leading cases on the existence of a 'privacy' interest in the context of this case. In *Washington Post Co. v. USDA*, 943 F. Supp. 31 (D.D.C. 1996), Judge Friedman overruled USDA's claim that Exemption 6 protected the names and addresses of recipients of agricultural subsidies, and the amount of subsidies each received. That case, as here, involved generic data contained in large USDA databases. The Court held that, "it is precisely because the list is so large and the information so generic that the individual's privacy interest is so small." *Id.* at 34. Here, USDA has released the names and addresses of the recipients, and the amount of subsidies each received. What is at issue is only voluminous, generic data on crops, acreage, and livestock. The Court's reasoning in *Washington Post* fits this case well.

In *Hill v. USDA*, No. 99-5365, 2000 WL 52074 (D.C. Cir. Mar. 7, 2000), the Court affirmed Judge Robertson's decision below "substantially for the reasons stated by the district court." Judge Robertson reasoned that, to be within Exemption 6, information concerning a business must be "[p]ersonal or 'personalized' financial information [that] contains

embarrassing disclosures' or involves 'sufficiently intimate details.' 77 F. Supp. 2d 6, 7-8 (D.D.C. 1999) (quoting *Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F 2d 673, 685 (D.C. Cir. 1976). In addition, Judge Robertson endorsed Judge Friedman's reasoning in *Washington Post* with respect to the 'generic' nature of the information at issue. 77 F. Supp. 2d at 9.

Against the backdrop of *Washington Post* and *Hill*, USDA's position here that there is a 'privacy' interest in generic crop, acreage, and livestock data cannot be sustained. The connection, if any, between these generic data on the one hand, and the 'intimate details' required by *Hill* on the other is far too attenuated. This is especially true given USDA's concession that in previous years it has released exactly the same data it is now withholding. *See* USDA's Reply at 15 to16. Absent some reasonable explanation for its change in legal position – and USDA has offered none – there is no basis for any conclusion that there is a 'privacy' interest in these data.

USDA argues that the withheld agency records have nothing to do with the amount of subsidy it pays individual farmers and therefore release of these records would not 'shed light' on

9

USDA's operations. Multi Ag Media relies on its Opposition to USDA's motion for summary judgment for the conclusion – supported by common sense in any event – that USDA collects the data at issue because agricultural subsidies are paid on the basis of crops, acreage, and livestock. This, of course, is the reason USDA collects these data in the first place.

V.   *Conclusion*

USDA's motion for summary judgment should be denied, and USDA should be directed to release the agency records still at issue.

July 20, 2006                                    Respectfully submitted,

                                                 MULTI AG MEDIA LLC
                                                 by its attorneys.
                                                 KING & SPALDING LLP


                                                 _____\s_____
                                                 James D. Miller
                                                 D.C. Bar 294371
                                                 1700 Pennsylvania Ave. NW
                                                 Washington, D.C. 20006
                                                 202-626-2902
                                                 FAX: 202-626-2902
                                                 jmiller@kslaw.com