IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Multi Ag Media LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 05-1908 (HHK) |
| ) | |
| U.S. Department of Agriculture ) | |
| ) | |
| Defendant. ) | |

SECOND SUPPLEMENTAL AFFIDAVIT OF
JOHN L. MONTANDON

PERSONALLY APPEARED BEFORE ME, the undersigned officer duly authorized by law to administer oaths, JOHN L. MONTANDON, who after being sworn stated of his personal knowledge as follows:

1. My name is John L. Montandon, and I am the President and co-founder of Multi Ag Media LLC, d/b/a Farm Market iD. I have previously submitted two affidavits in this case, the first dated March 3, 2006, and the second dated May 31, 2006. I made both of these affidavits in support of our opposition to the motion for summary judgment filed by defendant USDA. In my first affidavit, I described my background and my responsibilities at Multi Ag Media.

1

2. I make this second supplemental affidavit for the limited purpose of responding to the Second Declaration of Robin Wieland, dated July 3, 2006, which USDA submitted in support of its Reply to the Opposition to Summary Judgment of my company, Multi Ag Media.

3. In my Supplemental Affidavit, at ¶ 4, I identified eight specific data fields from the Compliance File that USDA has withheld but that contain the same type of crop and acreage data that can be derived for many farms from other data that USDA has released to us.[1] These eight specific data fields all relate to participation in USDA subsidy and benefit programs. In her Second Declaration, Ms. Wieland states that the Compliance File contains data on parts of farms that do not participate in USDA programs. For example, see ¶ 18 (page 9-10). I note that although Ms. Wieland devoted nine pages of her original declaration to the Compliance File, in that declaration she omitted any mention that the Compliance File contains data not related to USDA programs. In any event, each of the specific eight

---

[1] The names of the eight withheld data fields, together with the designations of each field as it appears in the database, are as follows: (a) the Reported Acreage (QTY-RPT-ACRE-1); (b) the Determined Acreage (QTY-DTER-ACRE-1); (c) the Farmland Acres (QTY-FMLD-ACRES); (d) Cropland Acres (QTY-CRPLND-ACRE); (e) Double Program Crop Acreage - Reported (QTY-RPT-DBL-ACRE); (e) Double Program Crop Acreage - Determined (QTY-DTER-DBL-ACRE); (f) Double Cropped Acreage - Reported (QTY-RPT-DBL-ACRE-1); and (g) Double Crop Acreage - Determined (QTY-DTER-DBL-ACRE-1).

data fields from the Compliance File does in fact relate to participation in USDA programs.

4. Ms. Wieland, at ¶ 23 (page 11) of her Second Declaration, states that, "With regard to farms that are comprised on only one tract, Mr. Montandon is correct in concluding that Multi Ag Media can determine their acreage only if the producers of those farms enrolled their entire farming operation in CRP [Conservation Reserve Program]." In this statement, Ms. Wieland is mistaken on one point, which is that that any single-crop tract (or any single crop in addition to acreage enrolled in the CRP) shown in the portions of the Compliance File that USDA has released can be related to the AMTA Tract File. In other words, we can determine complete crop and acreage data for any single-crop tract, and we can relate that tract to a specific, identifiable farm. It is not necessary for the entire farm to be enrolled in the CRP. I believe I made this point clear in ¶ 10 of my first Supplemental Affidavit. The number of farms that fall into this category is in the tens of thousands.

5. Ms. Wieland states that some data in the AMTA Tract file is historical, average data, *see* ¶ 17(b) (page 8) of her Second Declaration, but in the same paragraph she acknowledges that "total farmland and cropland acreage, at the tract level, *was also included in the AMTA Tract file.*" Id. (emphasis added). These data were released to us by USDA. The "total

3

farmland and cropland acreage," however, is not historical, average data. It is current, actual, program-year data. It was the "total farmland and cropland acreage" that Multi Ag Media used to derive the "full set of crop and acreage data" for approximately 22.4% of the farms in the Compliance File.

6. For these reasons, Ms. Wieland is not correct to state that the crop and acreage data we can derive on a substantial percentage of the farms in the Compliance File is only historical data and therefore different from the data in the Compliance File. By using the "total farmland and cropland data" that she concedes is contained in the AMTA Tract file, we are able to derive full crop and acreage data on many, many farms. By withholding the remaining fields from the Compliance File, however, USDA is preventing us from deriving the same data on other farms.

_____
John L. Montandon

Subscribed to and sworn before me Veronica Moran, Notary Public
this 19 day of July 2006

_____
Notary Public