## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **MULTI AG MEDIA LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DEPARTMENT OF AGRICULTURE,**<br><br>**Defendant.** |

**Civil Action 05-01908 (HHK)**

### MEMORANDUM OPINION AND ORDER

Multi Ag Media LLC ("Multi Ag") brings this action against the United States

Department of Agriculture ("USDA") under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, seeking the disclosure of agency records pertaining to the agricultural practices, acreage,

soil, crops, and livestock of farms that participate in USDA programs.  The USDA has provided

Multi Ag with most of the records it requested, but has withheld several others, citing FOIA's

Exemption 6, which permits the nondisclosure of certain personal information.  Before the court

is USDA's motion for summary judgment [#12].  Upon consideration of the motion, the

opposition thereto, and the record of the case, the court concludes that the motion must be

granted in part and denied in part.

### I.  BACKGROUND

On July 13, 2005, Multi Ag submitted a FOIA request to the Farm Services Agency

("FSA") of the USDA, seeking the release of database records that FSA maintains pertaining to

twelve agricultural subsidy and benefit programs.  The request also sought the release of a copy

of the Geographic Information System ("GIS") database for the contiguous 48 states. The FSA referred this latter request to the USDA's Aerial Photography Field Office, who decided to release the database in part. FSA processed the request for records pertaining to the twelve programs, announcing on August 8, 2005, that it would release three files in full, release three files in part, withhold five files in full, and make no determination with regard to one other because it was not available.

In response to Multi Ag's appeal of that decision, FSA decided that two files that had initially been released in part should be released in full, that all five files that had been withheld in full should be released in part, and that the file that was previously unavailable for determination should be released in part. Multi Ag submitted two other FOIA requests in October 2005, which resulted in the full release of four files that had been withheld in full initially and released in part on appeal. On February 15, 2006, FSA released some additional information from two files that had been released in part.

Four files are still in dispute: the Livestock Assistance Program file, the Livestock Compensation Program file, the Compliance file, and the GIS database. All files have been released in part, and Multi Ag has brought this action to compel USDA to release the withheld information in full.

## II. DISCUSSION

USDA moves for summary judgment, arguing that the withheld information falls within FOIA's Exemption 6, which pertains to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).  The court considers first whether Exemption 6 is applicable to the

withheld files; next, whether the "disclosure would compromise a substantial, as opposed to *de*

*minimis*, privacy interest," *Nat'l Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873,

874 (D.C. Cir. 1989) ("*NARFE*"); and finally, whether, under the appropriate balancing test, "the

substantial interest in personal privacy is not outweighed by the public interest in disclosure."

*Sims v. Cent. Intelligence Agency*, 642 F.2d 562, 573 (D.C. Cir. 1980).

**A.  Standard of Review Under FOIA**

"Unlike the review of other agency action that must be upheld if supported by substantial

evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to

sustain its action' and directs the district courts to 'determine the matter de novo.'" *Dep't of*

*Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989) (quoting 5

U.S.C. § 552(a)(4)(b)).  "FOIA reflects a general philosophy of full agency disclosure unless

information is exempted under clearly delineated statutory language." *Nat'l Ass'n of*

*Homebuilders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2003).  "At all times courts must bear in

mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Id.* (quoting *Dep't of*

*State v. Ray*, 502 U.S. 164, 173 (1991)).  Furthermore, "under Exemption 6, the presumption in

favor of disclosure is as strong as can be found anywhere in the act." *Wash. Post. Co. v. Dep't of*

*Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982).

Counterbalancing this strong presumption in favor of disclosure is the principle that

"[t]he only relevant public interest in the FOIA balancing analysis is the extent to which

disclosure of the information would shed light on an agency's performance of its statutory duties

or otherwise let citizens know what their government is up to." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citing *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quotations and alterations omitted)).  That is, FOIA's purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S at 773.

**B.  Applicability of Exemption 6**

Exemption 6 of FOIA exempts the government from having to release "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  To determine whether the USDA properly withheld the documents at issue in this case, the court must first determine whether the withheld files are files similar to personnel and medical files within the meaning of Exemption 6.  The term "similar files" is construed broadly and applies to "*all* information" regarding an individual. *Lepelletier*, 164 F.3d at 46 (emphasis added); *see also Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (Exemption 6 applies to all information that "applies to a particular individual"). Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Wash. Post Co.*, 456 U.S. at 602 (citing H. R. Rep. No. 89-1497, at 11 (1966)).

The court notes that businesses and corporations generally do not have a protectible privacy interest under Exemption 6. *Nat'l Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673, 685 n.44 (D.C. Cir. 1976).  However, an exception is usually made for family-owned or closely held businesses whose financial interests are identical to the financial interests of one or a

4

few individuals. *Id.* at 685–86 (noting the possibility of financial records of individually owned

businesses "that would necessarily reveal at least a portion of the owner's personal finances);

*Campaign for Family Farms v. Glickman*, 200 F.3d 1180, 1188–89 (8th Cir. 2000) ("An overly

technical distinction between individuals acting in a purely private capacity and those acting in

an entrepreneurial capacity fails to serve the exemption's purpose of protecting the privacy of

individuals."); BURT A. BRAVERMAN & FRANCES J. CHETWYND, INFORMATION LAW § 10-4.1.3,

at 412 ("[I]nformation about closely held corporations or sole proprietorships may be protected if

the information can be identified as applying to a particular individual").

Given the broad definition of "similar files" adopted by the Supreme Court and the D.C.

Circuit, as well as the fact that the information withheld by the USDA pertains overwhelmingly

to family-owned farms, *see* Def.'s Mot., Ex. 1, ¶¶ 16–17,[1] the release of which would reveal

personal information about those farms' owners, the court concludes that Exemption 6 applies to

the files in question here.

**C. Weighing of Public and Private Interests**

   *1. Livestock Assistance Program and Livestock Compensation Program Files*

The Livestock Assistance Program ("LAP") file contains information on livestock owners

who suffered grazing losses due to natural disasters. The program provides financial assistance

to farmers located in counties that experienced at least a 40% loss of grazing for three

---

[1] USDA concedes that there are some corporations listed in the withheld files that are not
family-owned, but contends that their presence does not undermine the propriety of their
withholdings because (a) that they make up a small fraction—roughly 2%—of the whole and (b)
it would be impracticably costly to sort out the corporations from the individuals and family-
owned or closely held farms. Multi Ag does not contest this claim. The court, therefore, does
not consider the question whether USDA is obligated to segregate information on the larger
corporations found in the files.

consecutive months.  USDA has released 57 fields—including the names and addresses of the

program recipients, the rate used to calculate LAP benefits, and the amount of the losses covered

by the FSA—and withheld six others under Exemption 6.  These six withheld fields contain

information on the number and weight range of a farmer's livestock; the number of days on

which they were fed; the percentage of a recipient's grazing land that was damaged by natural

disaster; and the number of acres that a livestock producer has available for grazing.

The Livestock Compensation Program ("LCP") file contains information on livestock

owners who suffered feed and pasture losses due to drought.  USDA has released information

contained in 43 fields and withheld the information, under Exemption 6, in the one field that lists

the number of livestock, by kind, that each recipient owns.

In determining the propriety of withholding these field under Exemption 6, the court

begins by considering whether the disclosure of the requested information would implicate a

substantial, as opposed to *de minimus*, privacy interest.  *NARFE*, 879 F.2d at 874.  It is well

established that "individuals have a privacy interest in the nondisclosure of their names and

addresses in connection with financial information."  *Lepelletier*, 164 F.3d at 47.  It is less clear,

though, how expansive the definition of "financial information" is in this context.  USDA does

not suggest that the disclosure of, for example, the weight range of a farmer's livestock is the

equivalent of the disclosure of her tax returns.  *See* Def.'s Reply at 9 ("FSA does not contend that

the information it is withholding tells one with certainty exactly what the financial condition of

the individual owner is.").  Indeed, USDA implicitly acknowledges the attenuation between the

requested information and a farmer's financial information.  *See* Def.'s Opp'n at 18 (stating that

disclosure of the weight range description "*may shed light* on the livestock owners' own financial

condition.") (emphasis added); *id.* (arguing that a farmer has a privacy interest in the number of

days she fed her livestock because "if a livestock owner was able to feed his livestock for 45 days

or less, such information *may reveal* the amount and value of feed available to a particular

livestock producer.") (emphasis added).

According to Multi Ag, this attenuation is so pronounced—due to the high number of

economic variables involved and the opacity of any given farm's ownership structure—that the

requested information would shed no light at all on any individual's financial information.  Multi

Ag further contends that USDA's expansive definition of "financial information" would undercut

the purpose of FOIA by making nearly everything protectible under Exemption 6.

It is self-evident that an individual's privacy interest in the weight range of her livestock

is less than her privacy interest in, say, the terms of her mortgage.  Nonetheless, as USDA points

out, livestock and crops are assets, and disclosing details about the quantity and quality of one's

assets reveals something about their owner's financial situation.  There is no requirement that

information paint a full picture of an individual's finances in order to be protected by Exemption

6.  And when the court "consider[s] the universe of possible consequences that the release of the

information might trigger," *Wash. Post Co. v. Dep't of Agriculture*, 943 F. Supp. 31, 34 (D.D.C.

1996), it recognizes the existence of people and organizations hostile to farming who would

exploit financial weaknesses to drive farmers out of business.  *See Forest Guardians v. Dep't of

Interior*, 2004 WL 3426434, at *2 (D.N.M. Feb. 28, 2004) (noting the plaintiff's tactic of seeking

out financially vulnerable ranchers in order "to put the squeeze on [them] to get off the land").

Given these considerations, the court believes that the privacy interest that would be implicated

by the disclosure of the withheld information in the LAP and LCP files, while not overwhelming, is nonetheless present.  Accordingly, the court must weigh this privacy interest against the public interest in disclosure in order to determine the propriety of USDA's withholdings.[2]

USDA argues that the privacy interests outweigh any public interest in disclosure given that (1) the public interest in this information is nonexistent because the withheld information sheds no light on what the government is up to; and (2) the information that it has already released tells Multi Ag everything that it wanted to know; to wit: "which livestock producer received $x$ dollars, which livestock producer received $y$ dollars, and which livestock producer received $z$ dollars."  Def.'s Reply at 19–20.  In so arguing, USDA misconstrues the purported purpose of Multi Ag's request.  The information sought by Multi Ag is not limited to which farmer received what subsidy; Multi Ag also wants to know *why* such decisions were made.  Disclosure of the withheld data would support the goal of knowing whether USDA is distributing taxpayer money appropriately.  If two adjacent farmers received hugely different subsidies for feeding their livestock, it would surely be relevant to know what differences exist between them to justify that discrepancy.  Likewise, if adjacent farmers have the same number and weight range of livestock, it would certainly shed light on the government's operations to know whether they received comparable subsidies.  And so on with the other withheld fields.  Disclosing the withheld information will shed light on how the government weighs the variables it collects to come up with a subsidy and whether its determination of those subsidies is reasonable.

---

[2]  Furthermore, Multi Ag's fear that USDA will use its definition of "financial information" to turn Exemption 6 into a black hole from which no data can escape appears unfounded, considering that USDA has already disclosed the majority of the requested information, including the names and addresses of, and subsidies received by, program participants.

While close, the court believes that this public interest in disclosure outweighs the privacy interests in the withheld information. Failing to recognize the public benefit of the information withheld, USDA fails to sustain its burden of proving otherwise. Therefore USDA's motion for summary judgment must be denied with regard to the information in the LCP and LAP files and this information must be disclosed.

   *2. Compliance File*

The Compliance File is a "massive electronic, tabular database that contains the types and number of acres of crops as reported by agricultural producers to FSA." Def.'s Mot. at 21. Notably, the file does include payment information and therefore does not shed any light on the government's subsidy decisions. The Compliance File has two parts to it—the Compliance Detail and the Compliance Summary. USDA has withheld eight of the Compliance Detail's 49 fields and 15 of the Compliance Summary's 39 fields. The withheld data falls into two general categories: information on irrigation practices and an assortment of acreage-related information, ranging from each farm's total acreage to the width of rows of tobacco and cotton crops.

As with the information in the LAP and LCP files, the court finds that the disclosure of the withheld information would implicate a substantial privacy interest. Like livestock, a person's land and crops are her assets. Disclosing the amount she owns, or whether or not she irrigates—which affects the land's value—would reveal financial information associated with an individual. This privacy interest may not be great, but it surpasses the "*de minimis*" threshold that the D.C. Circuit has set for moving on to the public interest stage of the analysis. *See NARFE*, 879 F.2d at 874.

However, unlike the information in the LAP and LCP files, the information in the Compliance files does not include information about USDA subsidies, thereby drastically decreasing the public interest in disclosure. Disclosing the withheld information in the Compliance file would merely reveal information about private citizens, without shedding any light on the government's activities. *See Reporters Comm.*, 489 U.S. 774 ("[T]he FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed.") (emphasis in original).

Multi Ag offers three responses to suggest that USDA's withholding was improper, none of which has merit. First, Multi Ag argues that it is nonsensical for USDA to withhold the acreage data in the Compliance file given that it disclosed similar acreage data in other files. While it is true that USDA released acreage and crop data for land implicated in other files, those files include payment and subsidy information. The Compliance file does not. Treating these files differently is neither unreasonable nor inconsistent.

Next, Multi Ag suggests that USDA waived its right to withhold this information by disclosing it in full in previous years. The fact that USDA has released the same information in the past does not effect a waiver, for the privacy interest protected by Exemption 6 belongs to the individual, not to the agency. *Reporters Comm.*, 489 U.S. at 763–65; *Sherman v. U.S. Dep't of the Army*, 244 F.3d 357, 363–64 (5th Cir. 2001) ("[O]nly the individual whose informational interests are protected by exemption 6 can effect a waiver of those privacy interests when they are threatened by a FOIA request. For that reason, we do not accept [the plaintiff's] argument

that [the government] has waived its authority to implement exemption 6.").  The fact that USDA once concluded that disclosure would not constitute a "clearly unwarranted invasion of personal privacy" does not preclude it from subsequently concluding to the contrary.

Finally, Multi Ag argues that there is a public interest in the disclosure, sufficient to overcome any privacy interest, because the data would make it easier for researchers "to analyze economic problems relative to effective farm policies, assess the economic impacts of crop diseases, analysis [sic] production efficiency, etc."  Pl.'s Opp'n; Ex. 1, at 3.  This argument overlooks the fact that '[t]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  *Lepelletier*, 164 F.3d at 46.  Because Multi Ag has not identified any way in which disclosure of information about non-subsidized land would shed light on government activities, the court cannot agree that the public interest in releasing the withheld data outweighs the privacy interests implicated by such disclosure.  *See NARFE*, 879 F.2d at 879 ("We have been shown no public interest in, and a modest privacy interest against, disclosure . . . .  We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time.").[3]  Accordingly, the court grants USDA's motion for summary judgment in this regard.

*3.  GIS Database*

The GIS database combines aerial photography and Global Positioning System technology to display and measure farms' boundaries, land features, and crop types.  USDA has

_____

[3]  Multi Ag's generalized argument that there is a public interest in how agricultural subsidies are dispersed is not responsive to the question of whether there is a public interest in the disclosure of acreage information about farms that do not receive subsidies.

11

released six of the database's twelve layers, including shape, state code, county code, Common

Land Unit calculated acres, comments, and the layer pertaining to the Conservation Reserve

Program.  It has withheld farm number, tract number, CLU number, Highly Erodible Land Type

Code, and CLU Classification Code.[4]  The withheld information, if disclosed, would allow Multi

Ag to determine the acreage of each farm (as well as each tract within a farm) and something of

the land's quality.

As discussed above, an individual has "a substantial, as opposed to *de minimis*, privacy

interest," albeit perhaps a modest one, in these details of her land ownership.  However, even

though the GIS database, if released in full, would be useful to Multi Ag or to other researchers,

its release would shed no light on USDA's performance of its statutory duties and therefore

USDA's withholding under Exemption 6 was proper.  Multi Ag suggests that because USDA

uses the GIS database to administer some of its programs—for example, by using satellite

imagery to detect fraud in the crop insurance program—there is a public interest in the disclosure

of the data contained therein.  This argument is unavailing.

The data at issue would only reveal the boundary lines and acreage of individual farms

and tracts.  Just because USDA examines those boundary lines to determine whether any

participants are cheating does not mean that the lines themselves reveal anything about what the

---

[4] Farm number, tract number, and CLU number identify the specific boundaries of farms and tracts within farms.  Highly Erodible Land Type Code indicates whether any part of the land is highly erodible.  CLU Classification Code reveals whether the land is urban, barren, has water, or perennial snow cover.  The CLUID, which was also withheld, is not at issue because Multi Ag states that it did not intend to request the CLUID.

government is up to.[5]  Multi Ag has not suggested that USDA is misusing the GIS data or

otherwise made allegations "sufficient to raise non-speculative questions about the workings of

the USDA."  *Wash. Post Co. v. USDA*, 943 F. Supp. 31, 36 (D.D.C. 1996).  Absent any

suggestion that it would be in the public interest to double-check USDA's use of the GIS

database to administer its programs, the court sees no public interest in releasing the boundary

lines and satellite images of all farms and tracts in the country.[6]  Consequently, the privacy

interest in nondisclosure outweighs the public interest in disclosure, and USDA is entitled to

summary judgment with regard to the withheld layers of the GIS database.

### III.  CONCLUSION

For the aforementioned  reasons, defendant's motion for summary judgment [#12] is

granted in part and denied in part as set forth in this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

Dated: August 9, 2006

---

[5]  Of course, the disclosure of *any* information that the government has could, under a literal interpretation of the phrase, "let citizens know what their government is up to," since, by definition, one of the things it is up to is the collection or storing of the data that is sought to be disclosed.  Such an interpretation, though, would render meaningless the Supreme Court's admonition that disclosure of "information about *private citizens* that happens to be in the warehouse of the Government," *Reporters Comm.* 489 U.S. at 774 (emphasis in original), does not advance FOIA's purpose.  That logic would also mandate disclosure of the details of every IRS audit, under the principle that it sheds light on what the IRS is up to.  The court concludes that disclosure of data that the government uses does not necessarily or automatically shed light on what the government is up to.

[6]  Multi Ag's argument that Google Earth displays satellite imagery, apparently obtained from elsewhere in the federal government, and that therefore the GIS database must be disclosed, is rejected.  The information that Google Earth displays is less private, as it does not show boundary lines.  Furthermore, the disclosure of some data by one government agency does not necessarily compel disclosure of vaguely similar data, contained in another database, by another agency.

13