# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 24, 2007     Decided February 15, 2008

No. 06-5231

MULTI AG MEDIA LLC,
APPELLANT

v.

DEPARTMENT OF AGRICULTURE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01908)

---

*James D. Miller* argued the cause for appellant. With him on the briefs was *Lance V. Oliver.*

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. On the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence* and *Megan L. Rose*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, and TATEL and GRIFFITH, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

2

Dissenting opinion filed by *Chief Judge* SENTELLE.

GRIFFITH, *Circuit Judge*: Under the Freedom of Information Act ("FOIA"), "an agency must disclose all records requested by 'any person,' 5 U.S.C. § 552(a)(3), unless the information sought falls within a specific statutory exemption. 5 U.S.C. § 552(d)." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). Multi Ag Media LLC ("Multi Ag"), a commercial vendor of agricultural data, has made FOIA requests for various records of farm data maintained by the United States Department of Agriculture ("USDA"). Invoking FOIA Exemption 6, which protects individual privacy interests in government records, USDA has withheld some of the requested information. Because there is a significant public interest in disclosure that outweighs the personal privacy interest USDA seeks to protect, we reverse the district court's grant of summary judgment in favor of USDA.

I.

Within USDA, the Farm Service Agency ("FSA") is the principal agency charged with promoting a stable and abundant American food supply. FSA meets this responsibility, in part, by offering subsidies and other financial assistance to farms. To qualify for FSA's benefits, farmers must submit information about their operations to a local FSA office. The information includes data on each farm's agricultural practices, acreage, soil, crops, livestock, and geographical location.

On July 13, 2005, Multi Ag submitted a FOIA request to USDA seeking release of thirteen databases maintained by FSA relevant to its agricultural subsidy and benefit programs. FSA processed the request and released some information, but

3

withheld other information on the ground that it contained private information about individual farmers protected by FOIA Exemption 6. Pressing its claim for the withheld information, Multi Ag exhausted its administrative appeals within USDA without success, then filed suit in the district court. The district court sided with Multi Ag in ordering the disclosure of requested information in two of the files, but also partly granted USDA's motion for summary judgment and allowed the agency to withhold information in two other files, the Compliance File and the Geographic Information System ("GIS") database. *Multi AG Media LLC v. USDA*, No. 05-01908, 2006 WL 2320941, at *5–7 (D.D.C. 2006). Multi Ag appeals that decision.[1] The Compliance File is a massive database with information on crops and field acreage for hundreds of thousands of individual farms across the country. It contains crop data that agricultural producers report to FSA to establish their eligibility for the government's subsidy and benefit programs. In response to Multi Ag's FOIA request, USDA withheld information on irrigation practices, farm acreage, and the number and width of rows of tobacco and cotton. The district court concluded that this information was protected by FOIA Exemption 6 because its disclosure "would reveal financial information associated with an individual . . . without shedding any light on the government's activities." *Id.* at *5.

The GIS database provides farm data on a digitized aerial photograph. USDA uses GIS as part of a system that combines Global Positioning System technology and aerial photographs to calculate acreage, identify crop types, and

---

[1] USDA filed a cross-appeal challenging the district court's order that it release the withheld information from the Livestock Assistance and Livestock Compensation program files, but has since abandoned that appeal.

4

create maps of farmland. The GIS database helps FSA verify farm features and thereby monitor compliance with regulations governing farm benefits. It also provides more specific information regarding the location of farms than do FSA's other files, which provide only general state and county location information. Declaration of Robin Wieland, ¶ 61 (February 15, 2006) ("Wieland Declaration") (stating that the GIS database provides a "specific geographic reference"). USDA released much of the GIS database to Multi Ag, but withheld information on farm, tract, and boundary identification, calculated acreage, and characteristics of the land such as whether it is erodible, barren, or has water or perennial snow cover. The district court concluded that because this information reveals details of land ownership, its disclosure would compromise a substantial privacy interest, but that disclosure would serve no public interest because the information would not "reveal anything about what the government is up to." *Multi AG Media LLC*, 2006 WL 2320941, at *6–7.

USDA argues on appeal that disclosure of the Compliance File and the GIS database would compromise farmers' privacy interests and that these files are properly withheld under FOIA Exemption 6. Multi Ag contends that disclosure of the files would not reveal anything personal about individual farmers and would advance a significant public interest by shedding light on USDA's administration of its subsidy and benefit programs.

**II.**

We review the district court's grant of summary judgment *de novo*. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145 (D.C. Cir. 2006). "In the FOIA context this requires that we ascertain whether the agency has sustained its burden of

5

demonstrating the documents requested are . . . exempt from disclosure under the FOIA." *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994); *see also* 5 U.S.C. § 552(a)(4)(B) (stating that "the burden is on the agency to sustain its action"). An agency may sustain its burden by means of affidavits, but only "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Gallant*, 26 F.3d at 171 (quoting *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980)).

FOIA's basic purpose reflects " 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' " *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting S. Rep. 89-813, at 3 (1965)). "At all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.' " *Nat'l Ass'n of Homebuilders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). FOIA's exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For that reason, they "must be narrowly construed." *Id.* And there is nothing about invoking Exemption 6 that lightens the agency's burden. In fact, "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Norton*, 309 F.3d at 32 (citing *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982)).

### III.

FOIA Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of

6

which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). We must pursue two lines of inquiry to determine whether USDA has sustained its burden to show that the information Multi Ag seeks is properly withheld under this exemption. First, we must determine whether the Compliance File and the GIS database are personnel, medical, or "similar" files covered by Exemption 6. If so, we must then determine whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Id.* This second inquiry requires us to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information. *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

*"Similar Files"*

The district court concluded that the Compliance File and the GIS database are "similar files" within Exemption 6, and even though the parties on appeal do not contest this point, we think it merits some explanation why business records such as these are covered by Exemption 6. In *National Parks and Conservation Ass'n v. Kleppe*, we reversed the district court's ruling that FOIA Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential," 5 U.S.C. § 552(b)(4), could be used to lawfully withhold business records on grounds of individual privacy. 547 F.2d 673, 686 (D.C. Cir. 1976). We explained that personal privacy interests are not "a relevant concern under the fourth exemption," but are under Exemption 6. *Id.* at 685–86. Although Exemption 6 "has not been extended to protect the privacy interests of businesses or corporations," *id.* at 685 n.44, we pointed out that "personal or 'personalized' financial information"

7

contained in the records of "individually-owned businesses" that "necessarily reveal[s] at least a portion of the owner's personal finances," may well qualify for protection under Exemption 6. *Id.* at 685.

What we said in *Kleppe* about Exemption 6 was correct and we apply it here. In *United States Department of State v. Washington Post Co.*, the Supreme Court explained that "Congress' primary purpose in enacting Exemption 6 was to protect *individuals* from the injury and embarrassment that can result from the unnecessary disclosure of *personal* information." 456 U.S. 595, 599 (1982) (emphases added). The Court held that Exemption 6 was not limited "to a narrow class of files containing only a discrete kind of personal information," but was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Id.* at 602. As we explained in *Horner*, "[t]he Supreme Court has made clear that Exemption 6 is designed to protect personal information in public records." 879 F.2d at 875. Were we to deem an individual's financial information unprotected by Exemption 6 simply because it is found in a business record, a cardinal purpose of Exemption 6 would not be served. It is clear that businesses themselves do not have protected privacy interests under Exemption 6, but where their records reveal financial information easily traceable to an *individual*, disclosing those records jeopardizes a personal privacy interest that Exemption 6 protects. We thus hold that Exemption 6 applies to financial information in business records when the business is individually owned or closely held, and "the records would necessarily reveal at least a portion of the owner's personal finances." *Kleppe*, 547 F.2d at 685.

In our case, to determine whether the Compliance File and the GIS database are "similar files" covered by

8

Exemption 6, we must consider whether the farms are individually owned or closely held, and whether disclosure of the files would reveal information about individual farmers' personal finances. In its affidavits, USDA asserts that approximately ninety-eight percent of the farms represented in the files are "family owned," meaning they are closely-held businesses or "small family farms" in which "the financial makeup of the businesses mirrors the financial situation of the individual family members." Wieland Declaration, ¶¶ 16, 28. USDA explains that the requested files contain various data fields such as state code, county code, farm number, and tract number, which are used together to trace the files to "a specific agricultural producer or landowner, who are [sic] almost exclusively individual producers and closely held businesses." *Id.* ¶¶ 50, 60. In the affidavit of its president, Multi Ag responds that the data in the Compliance File and the GIS database are not about individuals, but are "all generic or demographic." Affidavit of John L. Montandon, ¶ 18 (Mar. 3, 2006) (Montandon Affidavit). Multi Ag further argues that many farms have multiple owners and operators and that this "wide variety of ownership and operating vehicles . . . completely negates any inference about the personal finances of any individual." *Id.* ¶ 19, 21.

Although USDA does not offer evidence of specific farms owned by named individuals whose privacy interests in their personal financial information would be compromised by disclosure, it nonetheless establishes that a significant portion of the farms described in the Compliance File and in the GIS database are individually owned or closely held. Information about the crops on these farms "would necessarily reveal at least a portion of the owner's personal finances." *Kleppe*, 547 F.2d at 685. Multi Ag's affidavits have not controverted USDA's affidavits on this point. *See Gallant*, 26 F.3d at 171. Multi Ag has shown that because farm

9

ownership is complex, the crop information that is revealed may be less invasive of individual privacy than USDA claims, but Multi Ag has not shown that all farms are owned in such a manner that disclosing their assets will in no instances allow the public to trace the information to individual farmers. Multi Ag in fact concedes "that many farms are owned by a single family." *Id.* ¶ 24. It counters that these family owned farms are "often large, substantial businesses," *Id.*, but disclosure of an individual's financial information is no less protected under Exemption 6 simply because his assets are significant. The affidavits do not establish the number of farms for which the information would be easily traceable to individuals, but they confirm that this is the case for at least a significant portion of them, and this showing is sufficient for us to conclude that the files are covered by Exemption 6.

*Balancing Privacy and Public Interests*

The balancing analysis for FOIA Exemption 6 requires that we first determine whether disclosure of the files "would compromise a substantial, as opposed to *de minimis*, privacy interest," because "[i]f no significant privacy interest is implicated . . . FOIA demands disclosure." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). Our use of the word substantial in this context means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest. *Id.* Finding a substantial privacy interest does not conclude the inquiry; it only moves it along to the point where we can "address the question whether the public interest in disclosure outweighs the individual privacy concerns." *Nat'l Ass'n of Homebuilders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002). In other words, a privacy interest may be substantial—more than *de minimis*—and yet be insufficient to overcome the public interest in disclosure.

10

The parties dispute whether disclosure of the Compliance File and the GIS database would reveal private personal financial information. USDA argues that disclosing the withheld information would reveal assets that, for family owned farms, would invade their owners' privacy interests. For example, as USDA explains, the field and crop information in the Compliance File "bear[] directly on the value of the producer's land and the wealth of the producer in general." Wieland Declaration ¶ 52a. Disclosure of a farm's reported acreage and data on the number and width of rows of tobacco "may provide a snapshot" of a farm's financial circumstances and "shed[] light on the financial condition of the farmer." *Id.* ¶ 52b–h. Disclosure of the GIS database only heightens these privacy concerns because its information is set forth in photographs or maps.

By contrast, Multi Ag contends that release of the Compliance File and the GIS database would not "shed light on the financial condition of any particular farm, because there are too many very common economic variables," such as "market price variability, weather variability, technological changes, and disease impacts" that affect farm and crop values. Montandon Affidavit, ¶ 19; Affidavit of William E. Nganje, ¶ 3 (Mar. 3, 2006) ("Nganje Affidavit"). Multi Ag argues that "it is not accurate to equate information about crops and acreage directly with financial information of farms." Nganje Affidavit, ¶ 3. It also argues, as noted above, that the complexity of farm ownership negates any inference that might be drawn from the crop information about the finances of individual farmers.

Although Multi Ag has shown that economic variables weaken the correlation between farm assets and a farmer's financial situation, we conclude that the privacy interest that

11

would be compromised by disclosure of the files is greater than *de minimis*. *See Horner*, 879 F.2d at 874; *Norton*, 309 F.3d. at 35–37 (finding that the government had "established only the speculative potential of a privacy invasion without any degree of likelihood" but nonetheless "[v]iewing the asserted privacy interests as involving more than minimal invasions of privacy"). Telling the public how many crops are on how much land or letting the public look at photographs of farmland with accompanying data will in some cases allow for an inference to be drawn about the financial situation of an individual farmer. Because USDA has not made a showing of how often this may be the case, we are not persuaded that the privacy interest that may exist is particularly strong. Nonetheless, our standard at this stage is not very demanding, so we are willing to engage in the balancing inquiry by concluding that disclosure of the information would constitute a "more than minimal invasion[] of personal privacy." *Norton*, 309 F.3d at 35.

Having found a greater than *de minimis* privacy interest in the requested information, "we must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Horner*, 879 F.2d at 874. Because the "basic purpose of [FOIA] . . . focuses on the citizens' right to be informed about 'what their government is up to,' " information that "sheds light on an agency's performance of its statutory duties" is in the public interest.[2]

---

[2] Although Multi Ag may not want the information to check up on the government itself, the use for which the requestor seeks the information is not relevant for purposes of determining the public interest under FOIA Exemption 6. *Horner*, 879 F.2d at 875 ("The Act's sole concern is with what must be made public or not made public.") (quoting *U.S. Dep't of Justice v. Reporters Comm. for*

12

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989); *see also U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (stating that the relevant public interest under FOIA is "the extent to which disclosure [of requested files] would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*' ") (alterations in original) (quoting *Reporters Comm.*, 489 U.S. at 775).

USDA argues that because the Compliance File does not include payment information linking the farm data to specific subsidies, its disclosure would involve no public interest. The agency explains that some of the crops listed in the Compliance File are not tied to a subsidy program at all, but are merely reported because the farmer has an ownership interest in them and is required to submit information on all such crops. In response, Multi Ag argues that eligibility for farm benefits requires submission of all the data that is in the Compliance File. Multi Ag points out that USDA acknowledges that it collects only that information "necessary for acceptance into one or more of FSA's programs." Wieland Declaration, ¶ 28. If the information contained in the Compliance File is required of all farmers receiving benefits through FSA's programs, so the argument goes, then the public has an interest in knowing whether farmers who receive subsidies have complied by submitting the necessary information.

The district court agreed with USDA and found a "drastically decreas[ed]" public interest in disclosure of the Compliance File because it does not include payment

---

*Freedom of Press*, 489 U.S. 749, 772 (1989) (internal quotation marks omitted)).

13

information connecting its data to specific subsidies. *Multi AG Media LLC*, 2006 WL 2320941, at *5. The district court's focus is too narrow and misses the significant public interest we see in disclosure. Although the Compliance File may not directly say anything about a particular subsidy program, it says everything about whether a particular farm is eligible to participate in the benefit programs in the first place and thus "sheds light on the agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 773. FSA uses this information in making subsidy and benefit determinations, and the public has a significant interest in being able to look at the information the agency had before it when making these determinations so that the public can monitor whether the agency is correctly doing its job. For example, the Compliance File includes both acreage amounts reported by the farm operators and acreage amounts determined by FSA after conducting its own spot checks. *See id.* ¶ 52g–h. Without the data from the Compliance File, the public would have great difficulty verifying that FSA is properly conducting its spot checks and properly using the data obtained from the spot checks.

We are likewise persuaded that there is a significant public interest in disclosure of the GIS database. USDA argues that although the information it withheld from the database may say much about the farm, it says nothing about how the agency administers its programs. But USDA does not dispute that it uses the GIS database to monitor program compliance. With the information from the database, the public can more easily determine whether USDA is catching cheaters and lawfully administering its subsidy and benefit programs. As is the case with disclosure of the Compliance File, the information in the GIS database will enable the public to more easily monitor whether the agency is carrying out its statutory duty. *See Norton*, 309 F.3d at 35–37 (finding

14

a strong public interest in disclosure of data the Secretary of the Interior used to make critical habitat designations so that the public could know if the agency was lawfully administering its program).

Having found both a greater than *de minimis* privacy interest and a significant public interest in disclosure of the Compliance File and the GIS database, we must now balance the two to determine whether the agency has met its burden to show that "the substantial interest in personal privacy is not outweighed by the public interest in disclosure." *Sims v. CIA*, 642 F.2d 562, 573 (D.C. Cir. 1980). "For unless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail," and the agency may not withhold the files under Exemption 6. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991).

We are mindful that Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). FOIA is intended "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As the Supreme Court has explained, the purpose and plain language of the Act mandate a "strong presumption in favor of disclosure." *Ray*, 502 U.S. at 173.

That presumption is of special force here because the public has a particular and significant interest in the information Multi Ag seeks. USDA uses this information in the administration of its subsidy and benefit programs, and there is a special need for public scrutiny of agency action that distributes extensive amounts of public funds in the form

15

of subsidies and other financial benefits. *Brock v. Pierce County*, 476 U.S. 253, 262 (1986) ("[T]he protection of the public fisc is a matter that is of interest to every citizen."); *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1192 (11th Cir. 2007) ("easily" concluding that there is a substantial public interest under FOIA Exemption 6 in "learning whether FEMA is a good steward of (sometimes several billions of) taxpayer dollars in the wake of natural and other disasters"); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) ("[T]here is an obvious legitimate public interest in how taxpayers' money is being spent, particularly when the amount is large."). Congress has recognized the importance of ensuring the responsible use of these funds. For example, it created the Office of Inspector General ("OIG") within USDA to "prevent and detect fraud and abuse" in the "programs and operations" of the department. 5 U.S.C. App. 3 § 2; *see also* 7 C.F.R. § 2610.1(b) ("The mission of OIG is . . . to conduct, supervise, and coordinate audits and investigations of USDA programs and operations to determine efficiency and effectiveness; to prevent and detect fraud and abuse in such programs and operations; and to keep the Secretary and the Congress informed of problems and deficiencies relative to the programs and operations.").

In sum, given USDA's rather tepid showing that release of the files would allow the public to draw inferences about some farmers' financial circumstances, the interest in data that would allow the public to more easily monitor USDA's administration of its subsidy and benefit programs, and FOIA's presumption in favor of disclosure, we conclude that the public interest in disclosure of the Compliance file and GIS database outweighs the personal privacy interest. Accordingly, release of these files would not "constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C.

16

§ 552(b)(6), and USDA's reliance on Exemption 6 in withholding information from the files was improper.

## IV.

We reverse the district court's grant of summary judgment with respect to the Compliance File and the GIS database and remand the case to the district court for further proceedings consistent with this opinion.

*So ordered.*

SENTELLE, *Chief Judge*, *dissenting*: Although I am largely in agreement with the majority's analysis, that analysis leads me to a different conclusion, and I therefore respectfully dissent.

The majority is clearly correct that FOIA Exemption 6, 5 U.S.C. § 552(b)(6), permits the withholding of the Compliance File and Geographic Information System ("GIS") database if such disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Id.*; Maj. Op. at 5. The majority is further correct in acknowledging that "'Congress' primary purpose in enacting Exemption 6 was to protect *individuals* from the injury and embarrassment that can result from the unnecessary disclosure of *personal* information.'" Maj. Op. at 6 (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982) (emphasis the majority's)). I remain in concurrence with the majority as it acknowledges, obedient to *Washington Post*, that the protection of Exemption 6 extends to cover "'detailed Government records on an individual which can be identified as applying to that individual.'" Maj. Op. at 7 (quoting *Wash. Post*, 456 U.S. at 602), and when it recognizes that "[w]ere we to deem an individual's financial interest unprotected by Exemption 6 simply because it is found in a business record, a cardinal purpose of Exemption 6 would not be served." Maj. Op. at 7 (citing *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989)). As the majority further recognizes, "approximately ninety-eight percent of the farms represented in the files are 'family-owned,'" so that "the financial makeup of the businesses mirrors the financial situation of the individual family members." Maj. Op. at 7 (internal quotation marks omitted). The majority then reaches the inescapable conclusion that at least as to a significant portion of the farms described in the database, the crop information would be easily traceable to individuals.

2

I join the majority's further reasoning when it concludes that the disclosure of data bearing directly on the value of the producer's land and therefore, upon the wealth and income of the producer compromises the privacy interest of the farmer and "that the privacy interest that would be compromised by disclosure of the files is greater than *de minimis*." Maj. Op. at 10. It is only when the majority weighs the privacy interest in nondisclosure against the public interest in the disclosure of the records that I find myself in disagreement. Instead, I agree with the district court that the public interest involved in the disclosure of these files sits lightly upon the scales of balance.

As the district court noted, and the majority acknowledges, there is a "'drastically decreas[ed]' public interest in disclosure of the Compliance File because it does not include payment information connecting its data to specific subsidies." Maj. Op. at 12 (quoting *Multi AG Media LLC*, 2006 WL 2320941, at *5). As the district court further noted, given the volume of other information already disclosed from other databases, and the salient fact that the files in dispute contain no information about USDA subsidies, "[d]isclosing the withheld information in the Compliance file would merely reveal information about private citizens, without shedding any light on the government's activities." 2006 WL 2320941, at *5. Like the district court, and not unlike the majority, I find Multi Ag's argument that there is no invasion (or no more than a minimal invasion) of the privacy interests of the farmers most unconvincing. That argument depends upon the proposition that there is much more financial information in the universe of facts about the individual farmers that will not be disclosed than there is information being disclosed. To me this makes no more sense than saying it would be acceptable for the government to disclose the contents of tax returns because they do not provide information concerning the holdings or expectations of the taxpayer and therefore would constitute no invasion of privacy.

3

That proposition makes so little sense that there are specific regulations and statutes protecting the privacy of the taxpayer. *See, e.g.*, 26 U.S.C. § 7213 (making it a felony for federal or state employees willfully to disclose tax return information); 18 U.S.C. § 1905 (imposing criminal penalties on federal employees disclosing, *inter alia*, the "amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association"). It seems to be well accepted that it would be unfair for the government to compel taxpayers to disclose information and then allow that information to be spread at large without regard to the privacy of the taxpayer. Today's ruling puts the farmers in the same circumstances we would not impose upon other citizens and taxpayers. I therefore would affirm the conclusion and judgment of the district court that the privacy interest protected by Exemption 6 would outweigh the light public interest in disclosure.

Again, although I join in most of the reasoning of the majority, I dissent from its conclusion.